## HUFFMAN *v.* DAVISON, chief of police.

No. 11423. NOVEMBER 14, 1936.

*George D. Childs* and *T. P. Stephens,* for plaintiff.

*W. M. Dallas,* for defendant.

RUSSELL, Chief Justice. This case was transmitted to the Court of Appeals, and by that court transferred to us, for the reason that the Supreme Court alone has jurisdiction of writs of error in habeas corpus cases. The petitioner is not deprived of his liberty by virtue of any sentence of a court of this State, but was rearrested by the chief of police of Thomaston for a violation of a municipal ordinance of that city. In the sworn answer of the respondent it is alleged: "On or about the 23rd day of June, 1935, plaintiff was guilty of disorderly conduct in the City of Thomaston and was drunk, and was arrested by R. L. Knox, one of the policemen of said city, and turned over to defendant to be held to answer the charge against him. That when defendant attempted to take said Huffman to the city jail, said Huffman hit defendant in the eye with his fist while defendant was wearing his glasses, and defendant was forced to use force in order to place said Huffman in the city jail. That thereafter, on the 24th day of July, 1935, said Huffman was tried on said charges in the mayor's court of the City of Thomaston, and was found guilty and was sentenced to work 90 days on the public streets." There is a slight variance in the wording used by the petitioner on the one hand, and the respondent on the other, between paragraph 3 of the petition and paragraph 3 of the answer, the petition alleging that the remainder of the sentence was imposed on the condition that petitioner would leave the City of Thomaston; in the answer it is alleged that after Huffman had served thirty days he and his mother requested Hon. Hugh Thurston, mayor of said city, to postpone the service of the remainder of said sentence, etc. However, to the allegation in paragraph 4 of the petition, in which it is alleged that "on March 30, 1936, due to dire distress of his wife and children who reside outside of the city limits of Thomaston, all being without food and clothing and greatly in need of your petitioner's support, your petitioner thereby returned to them on said date," it is answered in paragraph 4 of the answer that defendant can neither admit nor deny the allegations in paragraph 4 of plaintiff's petition, for want of sufficient information. Thus

it is uncontradicted that the period of 90 days for which the accused was sentenced had long expired; and we are of the opinion that the chief of police had no authority to rearrest, or the City of Thomaston no power to attempt to revive a sentence which had expired by its own limitation. It is unnecessary to consider the point, much argued by counsel for both sides, whether a municipal court may or may not suspend a sentence. We shall make no ruling at this time as to the proper construction of the act of 1933 (Ga. L. 1933, p. 266; Code, § 27-2706). There is a paramount question which in our opinion controls this case.

If the mayor of Thomaston, whose order was obeyed by the police department, had not discharged Huffman from the chain-gang, even attempting to enforce a sentence of banishment, he would no doubt have remained in the custody of the officer until the expiration of the ninety days to which he was sentenced. It matters not what the motive underneath his discharge. It may be that at the time the appeal was made to the mayor there was no pressing need for such work upon the streets for mere day-laborers like Huffman to perform. It may be that the number of such convictions were so small that they were not adequate to require the services and consequent expense of a warden's salary. It may be that Huffman's clothes were ragged, and it would become necessary for the city to buy him a new suit of clothes and a new pair of shoes before the expiration of the sixty days that he had not served. It matters not what was the motive. The outstanding fact remains that Huffman's failure to work out his sentence according to its terms was due alone to the act of the mayor of Thomaston. It is wholly immaterial that the city mingled the blessings of a release with the thorn of banishment from his home. The sentence of the recorder had only one meaning: ninety days consecutive work upon the streets of Thomaston—not work to be taken in broken doses. Various decisions of this court on ordinary cases of habeas corpus are not unfamiliar, and the cases are very few where the rulings upon this subject are relaxed; but the general rule that criminal proceedings are to be most liberally construed in favor of the accused has not been always overlooked. It was recognized in *Gordon* v. *Johnson,* 126 *Ga.* 584 (55 S. E. 489), by Mr. Justice Lumpkin, with the entire court concurring. The only difference between the *Gordon* case and the case at bar

is that in the *Gordon* case the judge of the municipal court of Cordele imposed a fine of $500, $100 of which was to be paid cash and the remaining $400 to be paid provisionally. The provision in the present case is that Huffman shall leave Thomaston. In the *Gordon* case, he should pay $400 more if he misbehaved. The facts in that case were stated thus: "The mayor pro tem. of the City of Cordele, sitting as recorder, found an accused person guilty of violating a municipal ordinance, and sentenced him to be confined in the chain-gang for six months, and, if there should be no chain-gang to which he could be delivered, to be confined in the guard-house for sixty days; with direction, however, that the defendant could be released on payment of $500. The sentence further ordered and directed that upon the payment of $100, the other $400 should be suspended during good behavior. The defendant paid $100, and was released from imprisonment. Subsequently, by direction of the recorder, who, from evidence heard in another case, thought that the defendant was not behaving well, the city marshal arrested the defendant and held him for the purpose of requiring the payment of the additional $400, or of reincarcerating him as provided in the original sentence. *Held:* (1) Construing the entire sentence together, it gave a right to the defendant to be released upon the payment of $100. (2) The recorder had no authority to suspend the payment of $400, and after the payment of the $100 by the defendant and his discharge from custody, at some later time when he thought the defendant was not behaving properly, to direct his rearrest, and that he be put to work upon the chain-gang or imprisoned, as provided in the original sentence, unless he should pay the additional $400. (3) Where after paying the $100 provided in the sentence the accused was released, and was afterwards rearrested as indicated in the preceding note, such custody was unlawful, and he was entitled to be discharged by writ of habeas corpus." It was further said: "The effect of the sentence, taken as a whole, was that the accused should be released from imprisonment, upon the payment of $100."

In the case at bar the effect of the sentence, if taken as a whole, was that the accused should be released from imprisonment upon working upon the streets for ninety particular days, from the 24th of July, 1935, until the 24th of October, 1935, and on the latter date the service of his sentence would have been completely ful-

filled. In the opinion in the *Gordon* case Mr. Justice Lumpkin, speaking for the court, said: "The city recorder had no authority of law to add $400 to the fine, and provide that it should be indefinitely suspended during good behavior, but that the collection of it might be enforced by imprisonment, at the mere direction of such recorder. . . The facts of this case illustrate clearly why such a proceeding can not be upheld. The defendant had paid the amount which entitled him, under the sentence, to be set free. An additional amount of $400 as a fine was imposed, not to be collected certainly, but to be suspended 'during good behavior.' Who was to judge of this good behavior, and what should constitute it, can only be surmised. Somewhat more than a month after this sentence the same defendant was again accused of keeping whisky on hand for illegal sale, which was the offense of which he had formerly been convicted. On the trial of that case the evidence did not authorize a conviction, and the recorder discharged the defendant; but apparently he was of the opinion that the evidence showed that the defendant's behavior was not good, and he accordingly directed the marshal to enforce the sentence in the former case. In other words, the court seems to have convicted him of bad behavior, which was not an offense with which he was charged, or for which he was or could have been tried. Being thus of the opinion that the defendant's good behavior had ceased, the recorder withdrew an indefinite suspension of the right to collect the additional $400 mentioned in the original sentence. The defendant may or may not have been exercising 'good behavior.' But there is no law authorizing such a proceeding, or the enforcement of the collection of the additional $400 by imprisonment." We are of the opinion that the learned trial judge erred in remanding the petitioner to the chief of police of the city.

*Judgment reversed. All the Justices concur, except Gilbert and Bell, JJ., who dissent.*